UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

TRUSTEES FOR THE UPPER PENINSULA
PLUMBERS' AND PIPEFITTERS' HEALTH
& WELFARE FUND, et al.,

        Plaintiffs,

v.

        Case No. 2:05-cv-266
        CONSENT CASE

STEPHEN FRAZER,

        Defendant.
_____/

**OPINION**

Plaintiffs Trustees for the Upper Peninsula Plumbers' and Pipefitters' Health & Welfare Fund, Trustees for the Upper Peninsula Plumbers and Pipefitter's Educational Fund, Trustees for the Upper Peninsula Plumbers' and Pipefitters' BCTC Fund and Trustees for the Upper Peninsula Plumbers' and Pipefitters' Money Purchase Fund filed this lawsuit against defendant Stephen Frazer asserting that Frazer failed to comply with the fringe benefit contribution provisions of the collective bargaining agreement. Plaintiffs argue that they are entitled to conduct an audit to determine the past due contribution amounts owed by defendant to the funds. The trust funds were established under § 306 of the Labor Management Relations Act, 29 U.S.C. § 186, and the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* Plaintiffs have a fiduciary obligation to force employers who sign the collective bargaining agreement to pay fringe benefit contributions to the funds. 29 U.S.C. § 1145 provides that employers obligated to make

contributions to a multi-employer plan are bound by the terms of the plan or agreement. The statute states:

> Every employer who is obligated to make contributions to a multi-employer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

In an effort to enforce the agreement, plaintiffs requested permission to conduct audit work for the period covering January 2001 to date. Defendant refused to cooperate with the audit asserting that he was not a party to the collective bargaining agreement as an employer. Plaintiffs request a judgment against defendant for an audit and for payment of all accounts past due. Defendant has filed a counter claim against plaintiffs and a third party action against United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada, Local Union 506.

In 1996, defendant Frazer was a union plumber and pipefitter. After working for Johnson Controls, defendant decided to become self-employed specializing in heating and ventilation controls. Defendant contacted Steven Courier, who was a Business Agent and representative of the unions. It was defendant's intention to contribute to his pension fund and not to the health and welfare funds, because he was expecting to obtain heath insurance from his wife's policy. Courier informed plaintiff that he could contribute only to the pension fund and incur no liability to the health and welfare fund. Courier provided defendant with the "Acceptance of Agreement Form." Plaintiff signed the short form. The form provides:

> Acceptance of Agreement
> Effective from May 28, 1995 to May 30, 1998
> The undersigned has read and hereby approves the Agreement
> by and between the U.P. Mechanical Contractors Association, Inc.
> and the United Association of Journeymen and Apprentices of the

> Plumbing and Pipe Fitting Industry of the United States and Canada, Local Union 414, 506, 635, 728 and 786 and herewith adopts the same and becomes one of the parties thereto. It is expressly agreed and understood that the undersigned by his signature is bound by all the terms and conditions set forth herein.

Defendant claims that he was not provided with a copy of the collective bargaining agreement at the time he signed this document. A couple of weeks after signing this document, Courier informed defendant that Courier was mistaken and defendant would have to pay into both the pension fund and the health and welfare fund. According to Courier, defendant could not pay into only the pension fund as Courier had originally explained to defendant. Defendant immediately stated that he was unwilling to make such an agreement and that he would not sign up to be a contractor with the union. Courier died sometime before the trust funds first attempted to enforce the agreement.

For nine years defendant conducted his business without hiring employees and without any union involvement. Defendant never paid any employer contributions to the funds for pension or for fringe benefits. Then during the summer of 2005, Local 506 Business Manager Bob McCuthcheon visited defendant at defendant's work site and informed defendant that defendant needed to pay benefits for subcontractor Mike Gillis, from MG Mechanical. Gillis was performing work as a subcontractor for defendant. Defendant protested and told McCuthcheon to leave the work site.

The parties have moved for summary judgment. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine

issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Plaintiffs argue that defendant is bound by the agreement that he signed in 1996 and plaintiff must make contributions to the funds. Defendant argues that there never was an agreement, because he was defrauded to sign the form agreement by misrepresentations as to the true nature of the agreement. As a sole proprietor, without employees, defendant was informed that he would not need to pay into the health and welfare fund, but that he could fund his personal pension. Defendant never received a copy of the collective bargaining agreement. Moreover, defendant argues that even if he did receive the collective bargaining agreement at the time he signed the short form agreement, it failed to set forth the obligations of a sole proprietor without employees. Defendant further argues that nine years passed from the date he signed the agreement during which no party asserted any

rights under the agreement. Defendant argues that this period of inaction indicates that no party considered themselves bound by any agreement.

The parties, however, recognize that there exists only three defenses available in this case: (1) that the pension contributions are illegal; (2) that the collective bargaining agreement is void *ab initio*, as where there is fraud in the execution, and not merely voidable, as in the case of fraudulent inducement; and (3) that the employees have voted to decertify the union voiding the collective bargaining agreement. *Iron Workers' Local 25 Pension Fund v. Allied Fence and Security Systems, Inc.*, 922 F. Supp. 1250, 1257 (E.D. Mich 1996), citing *Agathos v. Starlite Motel,* 977 F.2d 1500, 1505 (3d Cir. 1992).

The parties recognize fraud in the execution provides defendant with the only potential defense in this matter. Fraud in the execution induces a party to believe the nature of his act is something entirely different than it actually is. "Fraud in the execution arises when a party executes an agreement with neither knowledge nor reasonable opportunity to obtain knowledge of its character or its essential terms." *Allied Fence and Security Systems, Inc.*, at 1257, citing *Uniform Commercial Code* § 3-3-05(2)(c) and *Restatement (Second) Contracts* § 163 (1981). The Sixth Circuit explained:

> Fraud in the execution causes a party to believe that the agreement it signs has essential terms different from those that actually appear in the contract. Thus, proof of fraud in the execution voids a contract. 'Fraud will not lightly be inferred and in the absence of such gross mistakes as would necessarily imply bad faith or a failure to exercise an honest judgment, [an agreement] may not be set aside. . . .'

*Electrical Workers Local, 58 Pension Trust Fund v. Gary's Electric Service Co.*, 227 F.3d 646, 656-657 (6th Cir. 2000). Fraud in the inducement, which is not a viable defense, arises when a party induces another to assent to something he otherwise would not have. Such as where "the

misrepresentation concerned whether the express provisions of the agreement would in fact be enforced." *Southwest Administrators, Inc. v. Rozay's Transfer,* 791 F.2d 769, 774 (9th Cir. 1986).

Plaintiffs argue that *Southern California Retail Clerks Union and Food Employers Joint Pension Trust Fund v. Bjourklund*, 728 F.2d 1262 (6th Cir. 1993), a fraud in the inducement example, is factually close to this case. In *Bjourklund*, the defendant owned a small grocery store. Defendant signed collective bargaining agreements with the Retail Clerks Union and the United Food and Commercial Workers Union. The agreements incorporated the terms of the trust funds which required pension, health and welfare contributions. Defendant claimed that he was fraudulently induced into signing the agreements by a union officer who represented that defendant would be eligible for a pension under the agreement, and that he only needed to make payments for himself and his one full-time employee. Defendant never made payments for his part-time employees. Defendant was actually not eligible for a pension under the terms of the collective bargaining agreement, because he was an employer. Defendant successfully sued the union for fraud in inducing him to sign the collective bargaining agreement in state court, and was awarded the amount of the pension he would have been entitled if eligible under the agreement.

The Trust Funds then sued defendant in federal court to collect contributions for hours worked by the part-time employees. Noting that traditional contract law did not apply, the court stated that defendant's claim that he was fraudulently induced was not a legitimate defense to the Trust Funds' lawsuit.

In *Allied Fence* the court ruled that it was not enough for the defendant to simply claim ignorance of the contents of the document that he had signed. The defendant signed the collective bargaining agreement believing that it was a temporary agreement to join the union for only one job. However, the court concluded that defendant's ignorance was not excusable because

- 6 -

he received the agreement before he signed the document. The court concluded that the facts fit fraud in the inducement and not fraud in the execution. In distinguishing fraud in the inducement from fraud in the execution the court explained:

> To maintain a defense of fraud in the execution, [the employer] would have to establish 'excusable ignorance of the contents of the writing signed.' *See* Uniform Commercial Code § 3-305 comment 7. But there simply was no confusion as to the actual contents of the agreement. Instead the misrepresentations concerned whether the express provisions of the agreement would in fact be enforced-an example of fraud in the inducement.

*Id.* at 1257. The court, noting that the result was harsh, stated "the law in this area is clear; so long as defendant had an opportunity to review the CBA before signing it, defendant cannot escape the obligation to make contributions pursuant to the CBA." *Id.* at 1260.

In *Iron Workers' Local 25 Pension Fund* v. *Nyeholt Steel, Inc.*, 976 F. Supp. 683 (E.D. Mich. 1997), the court concluded that a union representative's statement to defendant that defendant was signing a one job union agreement was fraud in the execution, because the statement caused defendant to assent to a contract that was entirely different from the proposed contract. Defendant was never given a copy of the collective bargaining agreement and was unaware that he was assenting to the terms of the collective bargaining agreement rather than a one job deal. Similarly, a second occurrence under similar facts was also held to be fraud in the execution. The court further noted that defendant never operated as a union business and its employees never sought benefits from the funds.

A union representative's oral modifications to the terms of a collective bargaining agreement may not be relied upon or enforced by an employer. *Operating Engineers Pension Trust v. Gilliam,* 737 F.2d 1501, 1506 (9th Cir. 1984). *See Central States v. Behnke, Inc.,* 883 F.2d 454, 459 (6th Cir. 1989) (employer contributions to trust funds on behalf of employees must be under

detailed written agreements specifying employer's duty to contribute). In *Gilliam*, the court determined that the defendant never agreed to be bound by the terms of the collective bargaining agreement. The plaintiff trust funds sued for past-due contributions after more than four years had passed since the defendant had signed the short form bargaining agreement and defendant had never paid any contributions. Defendant had told the union representative that he wanted to become a member of the union as an owner-operator in order to work a specific job. The union agent produced a number of standard forms including the short form agreement. Defendant signed the forms. Defendant did not read the forms and did not receive copies of the short form agreement or the union's master labor agreement. The Ninth Circuit concluded that the defendant had no knowledge that he was entering into the collective bargaining agreement by signing the short form agreement.

The issue is whether defendant knew at the time he signed the agreement that he was signing a collective bargaining agreement and whether the defendant knew or should have known the terms of the agreement. If defendant knew that he was signing a collective bargaining agreement and relied upon false representations from the union representative that certain terms of that agreement would not apply to him, then the fraud would be considered fraud in the inducement and defendant cannot argue that there existed no deal. If defendant believed that he was signing a document different than the actual terms of the collective bargaining agreement and defendant was not provided with the collective bargaining agreement, then fraud in the execution would relieve defendant of any responsibilities under the contract and the contract would be void.

The undisputed facts are that defendant signed a short form collective bargaining agreement. Defendant did not receive a copy of the agreement at the time he signed the agreement and actually never received the agreement until years later. Defendant was told by the union representative that plaintiff could receive pension benefits with the union, and that he would not have

to pay contributions for health benefits or receive health benefits. Approximately two weeks after signing the agreement, the union representative informed plaintiff that plaintiff had to pay both pension and health care contributions and defendant would be entitled to both a pension and health care benefit. This representation was apparently also false. At that time, defendant informed the union representative that he would not make that agreement. Defendant never held himself out as a union employer and never paid contributions for health benefits or pension benefits as a union employer, nor was defendant treated as a union employer by the union for the nine year period after he first signed the short form agreement.

The plaintiffs argue that this is a simple case. Defendant signed the short form agreement and although defendant might not have been provided with a copy of the collective bargaining agreement, defendant was familiar with collective bargaining agreements because of his prior membership in the union as an employee. While there exists evidence which might establish that defendant believed he was signing an agreement that would ultimately provide him with pension benefits without an obligation to pay contributions for health benefits, evidence also exists which could establish that defendant knew he was signing the collective bargaining agreement and, despite the language of the agreement, he believed that he agreed to an oral modification of the terms of the agreement with Business Representative Courier. Defendant's Verified Counter-Complaint For Declaratory Relief states:

> 7. That prior to execution of an April 22, 1996 "Acceptance of Agreement," an agreement was reached between Defendant/Counter-Plaintiff and Courier that Defendant/Counter-Plaintiff would contribute and continue to accrue retirement benefits relative to the Pension Fund, but Defendant/Counter-Plaintiff would have no liability to contribute for any of the other various Welfare Funds, or any entitlement to benefits from such Funds.

>    8. That the April 22, 1996 "Acceptance of Agreement" document, a copy of which is attached hereto as Exhibit A, was executed by Defendant/Counter-Plaintiff on the basis of representations by Courier that Defendant/Counter-Plaintiff could continue to fund his pension account with the union, but would have no obligation to make payment relative to the Health and Welfare Funds or any other of the Funds established or managed by the various Plaintiff's/Counter-Defendants.
>
>    9. That almost immediately after executing the April 22, 1996 Agreement, Courier advised Defendant/Counter-Plaintiff that if he wanted to continue paying into the Pension Fund, he would also have to contribute to the other various Welfare Funds which are parties Plaintiff in the above-captioned matter.
>
>    10. That Defendant/Counter-Plaintiff disclosed to Courier that Defendant/Counter-Plaintiff's wife would soon be providing Defendant/Counter-Plaintiff's family with free health insurance benefits and he was unwilling to contribute to the Health and Welfare Fund and various other Welfare Funds in order to continue contributing to the Pension Fund.
>
>    11. That Courier indicated Defendant/Counter-Plaintiff had two options: (1) pay into all Funds; or (2) treat the Agreement as null and void and make no payments to the various Welfare Funds.
>
>    12. That Defendant/Counter-Plaintiff opted to treat the Agreement as null and void, and made no payments as a Contractor relative to any of the various Welfare Funds.

These allegations can fit a fraud in the inducement theory, because it can be argued that Courier and defendant enter into a separate agreement despite knowing that the collective bargaining agreement would not support such an agreement. Certainly, any oral modifications of the collective bargaining agreement could not be relied upon or enforced. On the other hand, there does exist facts in this case that could support a fraud in the execution theory. Courier's representations to defendant about defendant's obligations were clearly false. Whether defendant had actual or constructive knowledge that the language of the collective bargaining agreement would not allow him to just pay contributions to a pension fund is clearly a disputed issue in this case. Accordingly, summary

judgment is not appropriate on whether fraud in the execution could render the short form agreement void.

Further, to the extent that defendant is relying on any claim for relief other than fraud in the execution in his counter complaint for declaratory relief, those claims for relief must be dismissed as a matter of law. Defendant also filed a verified third-party complaint for declaratory relief against the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada Local Union 506. In that complaint, defendant alleged fraudulent inducement against the union. Paragraph 3. Defendant also raised other contractual claims against the union. The claims against the union must be dismissed. Moreover, this court lacks jurisdiction to determine the validity of the collective bargaining agreement between defendant and the union. *Bauer v. RBX industries, Inc.*, 368 F.3d 569, 578-579 (6th Cir. 2004).

Accordingly, defendant Stephen Frazier's motion for summary judgment will be denied, plaintiff/counter-defendant trustees' motion for summary judgment requesting dismissal of the counter complaint will be denied as to defendant's claim of fraud in the execution and will be granted on all remaining claims, and third-party defendant union's motion for summary judgment will be granted, dismissing the third party complaint.

An Order consistent with this Opinion will be entered.

  /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:   April 13, 2006